UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN AVENDANO BONILLA,

                 Petitioner,

– against –

THOMAS DECKER, *Director, New York Field Office, U.S. Immigration & Customs Enforcement*; ALEJANDRO MAYORKAS, *Secretary, U.S. Department of Homeland Security*; MERRICK GARLAND, *U.S. Attorney General*; *and* CARL E. DUBOIS, *Sherriff Orange County*,

                 Respondents.

**OPINION & ORDER**

22-cv-4501 (ER)

RAMOS, D.J.:

      Petitioner Kevin Avendano Bonilla, a noncitizen in removal proceedings, brought a habeas action on June 1, 2022 to challenge his detention by U.S. Immigration and Customs Enforcement ("ICE") and obtain an order requiring that he be released on his own recognizance or be granted a constitutionally adequate bond hearing to challenge his continued detention. Doc. 1. On July 27, 2022, the Court signed a stipulation and order of dismissal by which the parties agreed that Avendano Bonilla would be provided a new bond hearing. Doc. 6 ("the Stipulation"). Avendano Bonilla now moves to enforce the Stipulation, contending that his bond hearing was constitutionally inadequate. Doc. 11. For the reasons set forth below, the motion is denied.

**I.    BACKGROUND**

      Avendano Bonilla is a native and citizen of El Salvador, who entered the United States without inspection at an unknown location on an unknown date. Doc. 13-1[1] at 3 (Notice to Appear). He was arrested on November 25, 2018 by the New York State

---

[1] Respondents submitted Avendano Bonilla's administrative record (Doc. 13-1) as an exhibit to the declaration of ICE Deportation Officer William Morrow (Doc. 13).

Police, and again on March 31, 2019 by the Suffolk County Police Department, and charged on both occasions with one count of driving while intoxicated ("DWI"). *Id.* at 31–32 (Criminal History Record). On September 9, 2019, Avendano Bonilla pled guilty to one count of DWI in connection with both his arrests and was sentenced to 3 years' probation, 280 hours of community service, a $500 fine, and revocation of his driver's license. *Id.* On January 1, 2021, he was arrested again by the Suffolk County Police Department for one count of driving while impaired by drugs and/or alcohol (a felony), one count of use of a vehicle not equipped with an ignition interlock device (a statutory condition of his probation), one count of aggravated unlicensed operation in the second degree, and one count of unlicensed operation of a motor vehicle. *Id.* at 33–34. In connection with those charges, he pled guilty to one count of impaired driving on July 22, 2021, but he has not yet been sentenced. *Id.* Suffolk County Police again arrested him on May 14, 2021 for false personation. *Id.* at 34. The disposition of the charge is unknown. *Id.*

### A. Removal Proceedings and the First Bond Hearing

On August 16, 2021, ICE arrested Avendano Bonilla and placed him in removal proceedings. *Id.* at 18–22 (Form I-213 (Record of Deportable/Inadmissible Alien)). His I-213 reports that, in October 2020, the Suffolk County Police Department and the Department of Homeland Security ("DHS") identified him as an MS-13 gang member on the basis of statements by informants that they had seen him wearing gang colors and in the company of known MS-13 members. *Id.* at 21. On August 16, 2021, ICE also served Avendano Bonilla with (1) a Notice to Appear ("NTA"),[2] which stated that he was removable pursuant to 8 U.S.C. § 1226(a) as an alien present in the United States without being admitted or paroled, and (2) a notice of custody determination stating that he was being detained pending the outcome of his removal proceedings because he had not

---

[2] NTAs are the charging documents used to initiate removal proceedings.

2

established that he did not pose a danger to the community, nor that he did not pose a flight risk. *Id.* at 3–6 (NTA), 8–11 (Custody Determination). The same day, Avendano Bonilla indicated on the custody determination forms that he sought a bond hearing before an immigration judge to review the custody determination. *Id.* at 9. Since August 16, 2021, Avendano Bonilla has been detained at the Orange County Jail in Goshen, NY. Doc. 13 ¶ 13.

On September 3, 2021, Avendano Bonilla and his counsel appeared before Immigration Judge Charles Conroy ("the IJ"). Doc. 13-1 at 68 (Nov. 18, 2021 IJ Decision & Order). He conceded proper service of the NTA but denied the factual allegations contained therein and the charge of removability; the IJ found the Government's evidence sufficient to establish the factual allegations and sustain the charge of removability by clear and convincing evidence, and he also designated El Salvador the country of removal at Avendano Bonilla's request. *Id.* Avendano Bonilla submitted a Form I-589 (Application for Asylum and Withholding of Removal), indicating he intended to pursue asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). *Id.*

On November 3, 2021, Avendano Bonilla and his counsel appeared before the IJ for his individual merits hearing, at which he conceded statutory ineligibility for asylum and withholding of removal but offered testimony in support of his application for deferral of removal under the CAT. *Id.* At the November 3, 2021 hearing, the IJ also conducted a custody redetermination. *Id.* at 39–43 (Dec. 13, 2021 Mem. Order of the IJ).

The IJ denied the application for deferral of removal under the CAT by decision and order dated November 18, 2021. *Id.* at 81. He accordingly ordered Avendano Bonilla removed from the United States to El Salvador. *Id.* And by memorandum order dated December 13, 2021, the IJ also denied Avendano Bonilla's request for a change in custody status because, in light of his past DWI arrests, Avendano Bonilla "did not meet his burden of proof to establish that he does not pose a danger if released." *Id.* at 42–43.

3

Avendano Bonilla appealed both determinations to the Board of Immigration Appeals ("the BIA"). Doc. 6 at 1; Doc. 13 ¶ 17.

On March 29, 2022, the BIA dismissed Avendano Bonilla's appeal of the bond decision. Doc. 13-1 at 37–38 (Mar. 29, 2022 BIA Order).

### B. The Habeas Corpus Petition and Second Bond Hearing

On June 1, 2022, Avendano Bonilla filed the instant petition for writ of habeas corpus, seeking an order from the Court requiring his release unless he be given a new, constitutionally sufficient bond hearing. Doc. 1. He argued that due process requires that the Government bear the burden of establishing by clear and convincing evidence that his continued detention is justified (rather than putting the burden on him to prove he poses neither a danger nor a flight risk) and requires that the IJ meaningfully consider alternatives to imprisonment. *Id.* at 31. On July 27, 2022, the Court signed the parties' stipulation to dismiss the habeas petition without prejudice. Doc. 6. The Stipulation further provided:

> The government shall . . . provide Avendano Bonilla with an individualized bond hearing before an impartial immigration judge. At that hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Avendano Bonilla poses a danger to the community or presents a flight risk that cannot be mitigated by reasonable conditions of supervision or monetary bond. The immigration judge must consider alternative conditions of release with respect to both dangerousness and risk of flight.

*Id.* ¶ 2. Moreover, the Court would retain jurisdiction to enforce compliance with the Stipulation. *Id.* ¶ 3.

In accordance with the Stipulation, Avendano Bonilla received a second bond hearing before the IJ on August 2, 2022 ("the Second Bond Hearing"). Doc. 11-2 (Aug. 2, 2022 Bond Hr'g Tr.). At that hearing, the Government submitted several exhibits, including Avendano Bonilla's I-213 (which contained his criminal history and noted that he was believed to be a member of MS-13); and Avendano Bonilla, represented by counsel, submitted letters from two witnesses, who also testified in his support. *Id.* at 2

4

Avendano Bonilla's former roommate, Julio César Hernandez, testified that, if Avendano Bonilla were released, Hernandez had a valid New York State driver's license and was willing and able to drive Avendano Bonilla to and from work or any other location. *Id.* at 13–14, 16. After questions from Avendano Bonilla's counsel and the Government, the IJ asked Hernandez to clarify a sentence in his personal statement regarding "[m]istakes and personal weaknesses against which [Avendano Bonilla] had been unsuccessfully fighting," and Hernandez testified that he had been referring to Avendano Bonilla's addiction to beer. *Id.* at 18–19. Second, Carmen Idrovo, Avendano Bonilla's aunt, testified that he could live with her if he was released. *Id.* at 23–25. On cross-examination, she further testified that her husband, who would also live in the same apartment, drinks beer or other alcoholic beverages on occasions at parties or events, but he did not keep any alcohol at home. *Id.* at 26–27.

>   Based on the evidence, the IJ held:
>
>> I'm going to find counsel that the government has established by clear and convincing evidence the respondent is a danger to the community. Here's why. First of all, as the US Supreme Court has said, drunk driving is an extremely dangerous crime. The Board of Immigration Appeals has also stated that, quoting the Supreme Court, . . . drunk driving kills thousands of people every year and causes property damage. The respondent does have a history of drunk driving.
>>
>> What we have here in the record I'll just step back a moment. I said I would give the documents diminished weight. I didn't refer to the I-213 when I said that the I-213 is a reliable document under the Second Circuit case law, so I give that appropriate weight. Nothing's been pointed within the four corners of the document that indicates that it's not reliable. Looking at this document and looking at the status of conviction, he has a history of DUI.
>>
>> Furthermore, the testimony from his friend, Mr. Hernandez indicates and demonstrates actually, that the respondent appears to have an ongoing problem with drinking, a problem that has not been resolved. That, to me, indicates that he's an ongoing danger. Taking the evidence together, it creates a firm conviction in my mind that the respondent continues to be a danger with respect to the I-213.

5

> Also, I would point to the information provided about the investigation and the finding the respondent is a member of the MS-13 gang. . . . I'll note for the record that this document was properly signed by a special agent. Again, nothing's been pointed to within the four corners of documents and indicates that it would not be reliable or authentic. All these things taken together to me, demonstrate that the government has established the respondent continues to be a danger to the community.
>
> It's created firm conviction in my mind. The clear and convincing evidence standard has been met.

*Id.* at 30–31. The IJ therefore denied the request for a change in custody status. Doc. 11-3 (Aug. 2, 2022 IJ Order) at 3.

The IJ further issued a memorandum order on September 29, 2022 to "further explain its reasons for its August 2, 2022 decision denying [Avendano Bonilla's] request for a change in custody status." Doc. 11-4 (Sept. 29, 2022 IJ Mem. Order) at 3. He noted that the I-213 referenced Avendano Bonilla's membership in MS-13 and his criminal history of drunk driving and arrests and held that those two factors constituted clear and convincing evidence that Avendano Bonilla posed a present danger to the community. *Id.* at 5–7. Additionally, the IJ expressed concern that Idrovo's husband, who would also be living at Idrovo's house with Avendano Bonilla if he were released, "consumes alcohol on occasion," noting that was "of particular concern given [Avendano Bonilla's] history of driving while intoxicated and recidivism." *Id.* at 7. Moreover, Hernandez and Idrovo's testimony and letters were insufficient to rebut the Government's evidence. *Id.* The IJ further wrote that he "cannot find that analyzing [Avendano Bonilla's] ability to pay bond or consideration of alternatives to detention would ameliorate the specific danger presented here—recidivist drunk driving alongside credible allegations of gang affiliation." *Id.* at 7–8. Finally, "[g]iven that the [IJ] found [the Government] met its burden to prove by clear and convincing evidence that [Avendano Bonilla] poses a present danger to the community, it is not necessary to determine whether he is also a flight risk." *Id.* at 8.

### C. The BIA and Second Circuit Appeals of the Removal Proceedings and Second Bond Hearing

On November 15, 2022, the BIA affirmed the IJ's decision denying deferral of removal under the CAT. Doc. 13-1 at 64–65 (Nov. 15, 2022 BIA Order ("the BIA's November 15 CAT Order")). On December 16, 2022, Avendano Bonilla, pro se, appealed the decision to the Second Circuit. *Avendano Bonilla v. Garland*, No. 22-6559, Doc. 1.

On January 23, 2023, the BIA affirmed the IJ's custody decision as to the Second Bond Hearing. Doc. 11-5 (Jan. 23, 2023 BIA Order).

On February 23, 2023, the Second Circuit declined to stay removal pending its decision on the appeal of the BIA's November 15 CAT Order. Doc. 13-1 at 91–92 (Feb. 23, 2023 2d Cir. Order).

On March 4, 2023, while his appeal of the BIA's November 15 CAT Order was still pending in the Second Circuit, Avendano Bonilla, with new pro bono counsel, moved before the BIA to reopen and remand his removal proceedings and applications for relief on the basis of ineffective assistance of counsel and changed country conditions. Doc. 11-7 (Mot. to Reopen). Five days later, on March 9, 2023, the BIA stayed removal pending its consideration of the motion to reopen. Doc. 11-8 (Mar. 9, 2023 BIA Order).

On June 26, 2023, the Second Circuit dismissed Avendano Bonilla's pro se appeal of the BIA's November 15 CAT Order because he failed to file a brief in support of his petition for review. No. 22-6559, Doc. 33.

On September 19, 2023, with his motion to reopen pending before the BIA and removal accordingly stayed, Avendano Bonilla filed a request for humanitarian parole. Doc. 11-9. But ICE denied the request on September 25, 2023. Doc. 11-10.

On October 20, 2023, the BIA denied Avendano Bonilla's motion to reopen his appeal as to relief from removal under the CAT. Doc. 13-1 at 84–87 (Oct. 20, 2023 BIA Order). The decision also operated to lift the stay on removal. *See* Doc. 11-8.

### D. The Instant Motion to Enforce the July 26, 2022 Stipulation and Second Circuit Appeal of the Motion to Reopen the Removal Proceedings

Three days later, on October 23, 2023, Avendano Bonilla filed the instant motion before this Court to enforce the Stipulation, alleging that the Second Bond Hearing failed to comply with the Stipulation because the IJ (1) failed to consider alternatives to detention and (2) misapplied the clear and convincing evidence standard. Doc. 11.

Two days later, on October 25, 2023, Avendano Bonilla appealed the BIA's denial of his motion to reopen his CAT application to the Second Circuit and asked that the Second Circuit stay his removal pending the appeal. Doc. 13-1 at 88–89 (Oct. 25, 2023 Petition for Review). Both the appeal and the motion to stay remain pending. *See Avendano Bonilla v. Garland*, No. 23-7487.

## II.    LEGAL STANDARD

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *BCM Dev., LLC v. Oprandy*, 490 F. App'x 409, 409 (2d Cir. 2013). "It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Murphy v. Inst. of Educ.*, 32 F.4th 146, 150 (2d Cir. 2022) (internal quotation marks and citation omitted).

In reviewing a motion to enforce an order to provide an immigration detainee with a constitutionally adequate bond hearing, "it is important to emphasize that the Court's task is narrow: it is to determine whether [the Government] complied with the [Opinion] and Order, not to review the hearing evidence de novo." *Medley v. Decker*, No. 18-cv-7361 (AJN), 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (citation omitted). The Court must be "'mindful of [its] obligation to afford . . . a degree of deference to the [IJ's] determinations and approach[] the issue raised by [the petitioner] with care, so as 'not to overstep its bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds.'" *Id.* (citations omitted).

### III. DISCUSSION

#### A. Avendano Bonilla Remains Detained Pursuant to 8 U.S.C. § 1226, and His Petition is Not Therefore Moot

Respondents first argue that Avendano Bonilla is now detained pursuant to 8 U.S.C. § 1231 (which provides for mandatory detention after entry of a final removal order), not 8 U.S.C. § 1226 (which provides for discretionary detention through the duration of removal proceedings), and his petition is therefore moot. Doc. 12 at 14–16.

However, the plain text of § 1231 provides that, if an administratively final removal order "is judicially reviewed and if a court orders a stay of removal of the alien, [then § 1231 does not apply until] the date of the court's final order." § 1231(a)(1)(B)(ii). Thus, the Second Circuit has held that "§ 1231 only applies when detention is 'imminent and certain,' and 'no substantive impediments remain to the immigrant's removal.'" *Alexandre v. Decker*, No. 17-cv-5706 (GBD), 2019 U.S. Dist. LEXIS 53166, at *14–15 (S.D.N.Y. Mar. 28, 2019) (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018) and collecting cases). Where an immigrant has "filed a motion to stay his removal along with a petition for review to the United States Court of Appeals for the Second Circuit," and those motions are still pending, his "removal is stayed pursuant to the Second Circuit's forbearance policy until that court decides his motion." *Id.* at *15 (describing the Second Circuit's forbearance policy as "an insurmountable substantive impediment to . . . removal" until the Second Circuit decides the motion to stay). Thus, until the motion to stay is decided, the immigrant cannot be detained pursuant to § 1231. *Id.*

Here, Avendano Bonilla has appealed the BIA's denial of his motion to reopen his CAT application to the Second Circuit and has moved for a stay of his removal (Doc. 13-1 at 89), and both applications remain pending (*see* No. 23-7487). Accordingly, he remains detained pursuant to § 1226, rather than § 1231, and his petition is therefore not moot. *See Alexandre*, 2019 U.S. Dist. LEXIS 53166, at *14–15.

9

### B. The IJ Complied with the Stipulation, and the Court Therefore Will Not Order Avendano Bonilla Released

Avendano Bonilla contends that the Second Bond Hearing failed to comply with the requirements of the Stipulation—and therefore requires that he be released—in two respects: (1) the IJ failed to consider alternatives to detention and (2) the IJ failed to apply the clear and convincing evidence standard. Doc. 11 at 12–21.

The Stipulation provides that the Government bore the burden at the Second Bond Hearing of "establishing, by clear and convincing evidence, that Avendano Bonilla poses a danger to the community or presents a flight risk that cannot be mitigated by reasonable conditions of supervision or monetary bond," and required the IJ to "consider alternative conditions of release with respect to both dangerousness and risk of flight." Doc. 6 ¶ 2. At the Second Bond Hearing, the IJ held that, Supreme Court and BIA precedent defined drunk driving as a dangerous crime, Avendano Bonilla had multiple convictions for drunk driving, and he was at risk of recidivating because he had never sought treatment for his alcohol addiction. Doc. 11-2 at 30–31; *see also* Doc. 11-4 at 7 (noting that it was "of particular concern" that Idrovo's husband, with whom he would be living if released, "consumes alcohol on occasion[,] . . . given [Avendano Bonilla's] history of driving while intoxicated and recidivism"). In conjunction with having been identified as a member of MS-13, the IJ concluded that Avendano Bonilla "continues to be a danger to the community." Doc. 11-2 at 30–31. He made no reference to alternatives to detention at the Second Bond Hearing. In his subsequent opinion, however, after reiterating his concerns with respect to Avendano Bonilla's history of drunk driving and alleged membership in MS-13, the IJ wrote that he "cannot find that analyzing [Avendano Bonilla's] ability to pay bond or consideration of alternatives to detention would ameliorate the specific danger presented here—recidivist drunk driving alongside credible allegations of gang affiliation." Doc. 11-4 at 7–8. And, because the Government had satisfied its burden of proving by clear and convincing evidence that Avendano

10

Bonilla "poses a danger to the community, it is not necessary to determine whether he is also a flight risk." *Id.* at 8 (citing Doc. 6 ¶ 2).

The Court holds that the Second Bond Hearing and the IJ's decision complied with the Stipulation.  First, although the IJ made no explicit mention of alternatives to detention at the Second Bond Hearing nor delineated any considered and rejected alternatives in the subsequent opinion, he did hold that no bond or alternatives to detention could ameliorate the danger of recidivist drunk driving or gang activity. *See* Doc. 11-4 at 7–8.  Avendano Bonilla argues that the Stipulation required the IJ to consider and discuss on the record "whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that [he] posed to the safety of the community." Doc. 11 at 13–14 (quoting *Fernandez Aguirre v. Barr*, No. 19-cv-7048 (VEC), 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019)).  But in *Fernandez Aguirre*, the district court found that the immigration judge's decision was "utterly void" of any discussion of non-incarceratory measures. 2019 WL 4511933, at *5.  Here, the IJ *did* consider other measures on the record but found they "would ameliorate the specific danger . . . [of] recidivist drunk driving [and] credible allegations of gang affiliation." *See* Doc. 11-4 at 7–8.[3]

Second, Avendano Bonilla argues that the IJ failed to apply the correct standard because the three reasons he gave as to dangerousness—that drunk driving results in harm, that Avendano Bonilla appeared to have an ongoing unresolved drinking problem, and that Avendano Bonilla was alleged to be a gang member—could not constitute clear and convincing evidence. Doc. 11 at 15–20.  He again relies on *Fernandez Aguirre* for the proposition that bare-boned criminal records without additional evidence and past

---

[3] The Court also agrees with the Respondents that it was not error for the IJ not to further analyze the risk of flight and alternatives to detention in connection thereto because the Stipulation stated that the Government needed only to establish that Avendano Bonilla "pose[d] a danger to the community *or* present[ed] a flight risk that [could] not be mitigated by reasonable conditions of supervision or monetary bond." *See* Doc. 12 at 24 (citing Doc. 6 ¶ 2).

11

tense statements of addictions coupled with impermissible speculation of harm are legally insufficient to satisfy the Government's burden. *Id.* But the IJ's determination here was not based only on such bare-boned evidence. Avendano Bonilla has one felony and one misdemeanor conviction for driving while under the influence (Doc. 13-1 at 31–34), and his former roommate testified that Avendano Bonilla had an alcohol addiction that he had been "unsuccessfully fighting" (Doc. 11-2 at 18–19). Moreover, Suffolk County Police and DHS identified Avendano Bonilla as a member of MS-13. Doc. 13-1 at 21. The Court is not permitted to review the IJ's discretionary custody determination de novo, even if it would have decided against continued detention; instead, it is limited to the "narrow" task, giving due deference to the IJ's decision, of whether the terms of the Stipulation were met. *See Medley*, 2020 WL 1033344, at *2. Accordingly, the Court cannot find that the IJ failed to comply with the Stipulation and will not order Avendano Bonilla's release.

## IV. CONCLUSION

For the reasons set forth above, Avendano Bonilla's motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion (Doc. 11).

It is SO ORDERED.

Dated:  January 17, 2024
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.